## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| HUEY J. CHERAMIE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 10-343 |
| | ) | |
| DAMON S. JUDD, and KRG CAPITAL | ) | Section: "N"   Division: (3) |
| MANAGEMENT, L.P. d/b/a KRG | ) | |
| CAPITAL PARTNERS, L.L.C. | ) | Honorable Judge: Kurt D. Englehardt |
| | ) | |
| Defendants. | ) | Magistrate: Daniel E. Knowles, III |

### DEFENDANT KRG'S MEMORANDUM IN SUPPORT OF DEFENDANT KRG'S MOTION FOR SUMMARY JUDGMENT

Defendant KRG Capital Management, L.P. d/b/a KRG Capital Partners (hereinafter "KRG") respectfully submits this Memorandum in Support of its Motion for Summary Judgment on all of Plaintiff Huey Cheramie's claims.

### I.      INTRODUCTION

Plaintiff's claims against Defendant arise from an alleged oral promise between Plaintiff and Defendant to "repurchase" Plaintiff's shares in Marquette Transportation Company Holdings, LLC (hereinafter "Marquette"). Defendant seeks summary judgment on Plaintiff's claims because there are no disputed facts that present triable issues and Defendant is entitled to judgment as a matter of law.

1

First, Defendant is entitled to judgment as a matter of law on Plaintiff's claims because Plaintiff admitted in a prior lawsuit that there was no oral promise requiring the repurchase of his shares in Marquette.   The equitable doctrine of judicial estoppel precludes Plaintiff from asserting a position in this proceeding that is contrary to a position previously taken in an earlier proceeding.   Plaintiff's position in this lawsuit clearly is inconsistent with his admission in the earlier proceeding—that no binding contract existed for the repurchase of his shares and that he had proposed the repurchase merely as a possible means of resolving the disputes—and the court relied expressly on his admission in dismissing the prior proceeding.   As such, Plaintiff is judicially estopped from changing his position in this lawsuit.   Because Plaintiff cannot simply create a material issue of fact by contradicting his prior representation, Defendant is entitled to judgment as a matter of law on Plaintiff's claims.

Second, the alleged oral promise upon which Plaintiff bases his claims is unenforceable because the oral promise contravenes express provisions of the Marquette Transportation Company Holding, LLC Amended and Restated Limited Liability Company Agreement, dated March 21, 2007 (hereinafter "the LLC Agreement"), to which Plaintiff is a party.   Specifically, the LLC Agreement contains a right of first refusal and a "tag along" right on the part of other shareholders, both of which come into effect upon the attempted sale of Marquette shares to a third party.   As such, any alleged oral promise by Defendant would be subject to the right of first refusal and "tag along" provisions of the LLC Agreement.   The alleged oral promise between Plaintiff and Defendant does not contain those terms, and any promise or attempt by Plaintiff to sell his shares without complying with those provisions would also violate the transfer provisions of the LLC Agreement.   Therefore, the alleged oral promise fails for lack of consideration, as

\\\DE - 068655/000041 - 460252 v9

Plaintiff could not sell his shares pursuant to the alleged oral promise without breaching the LLC Agreement.   Accordingly, Plaintiff's acceptance of and attempt to enforce the alleged oral promise is unenforceable.

Third, the alleged oral promise between Plaintiff and Defendant is unenforceable because any evidence relating to such a promise is inadmissible under the parol evidence rule.  Any such evidence was not reduced to writing contained within the documents governing the actual agreements and transactions between the parties.  Because these documents are the complete and entire agreements between the parties, any outside evidence of an alleged oral promise that was not included in these documents is inadmissible under the parol evidence rule.

## II.    FACTUAL BACKGROUND

This lawsuit centers around the validity and enforceability of an alleged oral promise between Plaintiff and Defendant.  In early 2007, Defendant purchased a substantial interest in Marquette.  (Compl. ¶ 7.)   Marquette is the parent company of Marquette Transportation Company Offshore, LLC (hereinafter "Marquette Offshore").  (Id.)  Marquette Offshore began negotiations with Plaintiff to purchase several of Plaintiff's businesses (the "Cheramie Companies").  (Id. ¶ 8.)  These negotiations culminated in the sale of the Cheramie Companies by Plaintiff to Marquette on August 31, 2007.  (Id. ¶ 13.)

As part of the $34 million purchase price of the Cheramie Companies, Plaintiff took $2,500,000.00 in shares of Marquette.  (Id. ¶ 10.)  Plaintiff entered into certain agreements with Marquette regarding those shares, namely a Purchase Agreement, a Subscription Agreement, a Restricted Units Agreement, and a Joinder Agreement.  See generally Exs. 1–4.  Pursuant to

3

those Agreements, Plaintiff's shares, like all other shares in Marquette, are subject to the terms of the LLC Agreement.  Id.

Additionally, Marquette Offshore and Plaintiff agreed that Marquette Offshore would employ Plaintiff as President.  (Compl. ¶ 11.)  Plaintiff and Marquette entered into an Employment Agreement and a non-compete and non-solicitation agreement that govern the terms of Plaintiff's employment.  See generally Exs. 5–6.  On March 9, 2009, Plaintiff resigned from his position with Marquette.  (Compl. ¶¶ 21–22; Answer ¶ 22.)

Following his resignation, Plaintiff demanded that Defendant and Marquette repurchase his shares.  (Compl. ¶ 23.)  Defendant rejected Plaintiff's request, and Plaintiff filed this lawsuit. (Answer ¶ 24.)  Plaintiff alleges that, during the negotiation for the sale of the Cheramie Companies, Defendant orally promised to repurchase his shares if he died, was incapacitated, or was no longer employed as President of Marquette Offshore.  (Compl. ¶ 12.)  Plaintiff further alleges that Defendant breached this promise by refusing his request to repurchase his shares.  (Id. ¶¶ 25–33.)  Defendant denies that any oral promise existed or currently exists for the repurchase of Plaintiff's shares.  (Answer ¶¶ 12, 24–33.)  And for the reasons set forth below, Defendant seeks summary judgment on Plaintiff's claims.

## III.    ARGUMENT

Summary judgment is proper where "there is no genuine issue as to any material fact and [] the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  Facts and inferences are viewed in the light most favorable to the non-moving party.  Faruki v. Parsons SIP, Inc., 123 F.3d 315, 318 (5th Cir. 1997).  But "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary

4

judgment; the requirement is that there be no *genuine* issue of *material* fact." <u>Anderson v.</u> <u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 247–48 (1986).  Once the movant properly supports its motion for summary judgment, the burden switches to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986); Fed. R. Civ. P. 56(e).  When the non-moving party fails to make a "sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," the movant is entitled to a judgment as a matter of law. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

Summary judgment is warranted here for three reasons.  Most importantly, there is no <u>genuine</u> dispute regarding the alleged "oral promise."  Plaintiff admitted in an earlier proceeding that no enforceable promise existed for the repurchase of his shares and further admitted that the suggestion of such a purchase came from Plaintiff and was a mere proposal to resolve conflicts that had arisen between the parties with respect to Plaintiff's employment and other issues. Plaintiff's prior admission eliminates any genuine issue of fact as to whether there was an enforceable oral promise.  On this basis alone, summary judgment is warranted on all of Plaintiff's claims.  In addition, Plaintiff's complaint fails to state a legal claim upon which relief can be granted, as the oral promise between Plaintiff and Defendant for the transfer of Plaintiff's shares upon Plaintiff's termination is invalid under the terms of Marquette's LLC Agreement, to which Plaintiff is a party.  And lastly, the parol evidence rule prohibits admitting any evidence of an alleged oral promise between Plaintiff and Defendant for the repurchase of shares because such an agreement was not reduced to writing within the governing documents.  Accordingly, no genuine issue of fact nor valid legal claim exists with regard to Plaintiff's allegations.  And as the

attached Statement of Uncontested Material Facts demonstrates, summary judgment is proper on Plaintiff's claims.

A.       **Plaintiff Admitted in a Brief Filed before Judge Mary Ann Vial Lemmon That He Possesses No Contractual Right to Demand the Repurchase of His Shares in Marquette, and He is Precluded from Taking a Contrary Position in this Lawsuit.**

Plaintiff resigned from his employment with Marquette Offshore in March 2009.  Soon after he resigned, Plaintiff threatened to breach his non-compete and non-solicitation agreement with Marquette.  See Ex. 6, Agreement to Protect Confidential Information, Assign Inventions, and Prevent Unfair Competition and Unfair Solicitation Agreement, dated Aug. 31, 2007.  Plaintiff's threat forced Marquette to seek a declaratory judgment requiring Plaintiff to honor his agreement.  See Ex.7, Marquette Transp. Co., LLC v. Cheramie, No. 09-3606, Doc. 3 (E.D. La. June 24, 2009).  Additionally, Marquette sought a declaratory judgment that it did not have an obligation to repurchase Plaintiff's shares in Marquette.  Id.  Plaintiff filed a motion to dismiss the action, wherein Plaintiff argued that there was no justiciable controversy with regard to the repurchase of his shares because of the lack of any legal obligation to do so.  Ex. 8, Marquette Transp. Co., LLC v. Cheramie, No. 09-3606, Doc. 5-2, at 12 (E.D. La. June 24, 2009).  Plaintiff cannot now demand that Defendant repurchase his shares when he previously admitted that no such obligation exists.

As the United States Supreme Court has explained, when a party "assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him."  New Hampshire v. Maine, 532 U.S. 742, 749 (2001).  This equitable doctrine, known as judicial

6

estoppel, "'prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding.'"  Hall v. GE Plastic Pac. PTE Ltd., 327 F.3d 391, 396 (5th Cir. 2003) (citing Ergo Sci., Inc. v. Martin, 73 F.3d 595, 600 (5th Cir. 1996)).  The purpose of the doctrine is to "protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment."  New Hampshire, 532 U.S. at 749–50 (internal citations and quotations marks omitted).  Judicial estoppel "prevent[s] litigants from playing fast and loose with the courts."  Hall, 327 F.3d at 396 (internal quotation marks omitted).  In doing so, the doctrine reduces "the risk of inconsistent court determinations."  Hopkins v. Cornerstone Am., 545 F.3d 338, 347 (5th Cir. 2008).

       The Fifth Circuit recognizes two requirements that must be satisfied for a court to apply the doctrine of judicial estoppel: first, "the party's position must be clearly inconsistent with its previous one," and second, "the previous court must have accepted the party's earlier position."  Id. at 347; Hall, 327 F.3d at 396.  The "judicial acceptance" requirement aims to "'minimize the danger of a party contradicting a court's determination based on the party's prior position and, thus, mitigate the corresponding threat to judicial integrity.'"  Hall, 327 F.3d at 398 (citing In re Costal Plains, Inc., 179 F.3d 197, 205 (5th Cir. 1999)).  The judicial acceptance consideration does not require the party to have previously prevailed on the merits, but rather requires only that the party made an argument "with the explicit intent to induce the [prior] court's reliance."  Id. at 398–99 (citation omitted).  As such, the previous court's acceptance "could be either as a preliminary matter or as part of a final disposition."  Id. at 398 (internal quotation marks omitted).  This includes rulings on procedural matters that result in the dismissal of a case.  Id. (finding

7

acceptance of prior position where court ruled on party's behalf concerning procedural matter and dismissed the case).

The judicial estoppel doctrine applies here to prevent Plaintiff from taking a position inconsistent with his position in the earlier lawsuit. In arguing that no justiciable controversy existed regarding the repurchase of Plaintiff's shares, Plaintiff admitted the following:

> [Plaintiff], however, has never made a legal demand for the repurchase of his shares because *[Plaintiff] is not contractually entitled to such a remedy*; rather, [Plaintiff] sought the repurchase of his shares by Marquette *as an amicable solution to the many disputes between the parties. [Plaintiff] readily admits that he possesses no contractual right to demand that Marquette repurchase his shares*. Accordingly, since [Plaintiff] has never stated that [Marquette is] contractually required to purchase his shares, there is no legal controversy with respect to [Plaintiff's] shares.

Ex. 8, at 12 (emphasis added). This broad admission regarding the lack of any alleged oral promise to repurchase Plaintiff's shares constitutes a position that is clearly inconsistent with his current argument that Defendant's refusal to repurchase his shares constitutes a breach of contract. Plaintiff argued that there was no justiciable controversy on the basis that there was no promise and that his demand was nothing more than a proposed "amicable solution" to the parties' many disputes. As such, the first requirement of judicial estoppel is satisfied.

Plaintiff's current position also meets the second requirement for judicial estoppel, that of judicial acceptance. Plaintiff's argument in the prior proceeding—namely that he possesses no right to demand the repurchase of his shares and that his demand was a mere proposal—was made with the intent of convincing the court to dismiss the action against him. Id. Plaintiff successfully induced the court to rely on his position, as evidenced by the court's dismissal of the action and its specific citation of his argument in its analysis. Ex. 9, Marquette Transp. Co., LLC v. Cheramie, No. 09-3606, Doc. 26, at 11 (E.D. La. June 24, 2009). That Plaintiff made the

8

admission to obtain an outright dismissal emphasizes his reliance on that position and highlights Plaintiff's current attempt to "play fast and loose" with this Court.  Accordingly, having received the benefit of the prior court's acceptance of Plaintiff's former position—that he has no contractual right to the repurchase of his shares—and Plaintiff is judicially estopped from asserting a contrary position in this action.  Plaintiff may not assume a contrary position in this lawsuit simply because his interests have changed and he was unable to broker an amicable resolution to his disputes with Marquette.

Plaintiff's statement is clear that no oral promise was ever made and that he simply proposed a buyout as an amicable solution to his employment dispute.  He made that statement in order to persuade the court to dismiss the claim against him, which it did.  Plaintiff cannot now create a material issue of fact regarding his right to demand the repurchase of his shares in Marquette simply by contradicting his prior representations to another court.  Plaintiff's prior admissions are admissible in this action.  "Prior pleadings are admissible if such pleadings indicate that the party against whom they are admitted has adopted a position inconsistent with that in the earlier litigation."  Mitchell v. Fruehauf Corp., 568 F.2d 1139, 1147 (5th Cir. 1978). As explained above, Plaintiff's position here is inconsistent with his earlier position that no contractual agreement granted him the right to the repurchase of his shares.  Plaintiff himself explained that his request to repurchase his shares was offered in attempt to reach an "amicable solution" with Marquette but provided him with no contractual right to demand such repurchase. Ex. 8, at 12.  Thus, Plaintiff's claims that Defendant is in breach of a contract to repurchase his shares are entirely incompatible with Plaintiff's prior admissions.

Precluding Plaintiff from asserting a contrary position to his earlier admission not only protects the integrity of the judicial process, but also prevents Plaintiff from playing "fast and loose" with this Court.   Accordingly, Defendant asks the Court to grant summary judgment against Plaintiff because his prior admission and the judicial estoppel doctrine establish that Defendant is entitled to judgment as a matter of law.

**B.      The Alleged Oral Promise is Invalid Under the Terms of the LLC Agreement.**

The alleged oral promise between Plaintiff and Defendant cannot be enforced, as any promise between Defendant and Plaintiff is invalid under the LLC Agreement.   Specific terms in the LLC Agreement restrict the transfer of shares in Marquette to third parties.   See Ex. 10, LLC Agreement, Art. IX, dated Mar. 21, 2007.   These terms are valid contractual obligations agreed to by all shareholders, including Plaintiff.   See Ex. 4, Joinder Agreement, dated Aug. 31, 2007. However, Plaintiff makes no allegation that the oral promise contains any of the required provisions set forth in the LLC Agreement.   And any oral promise to repurchase Plaintiff's shares would have been without consideration, as Plaintiff could not perform his part of the agreement without breaching his contractual obligations under the LLC Agreement.   Plaintiff's insistence on the repurchase of his shares without complying with the restrictions on the transfer of those shares thus contravenes the clear terms of the LLC Agreement, to which, as a unitholder, he is bound.   Because the alleged oral promise between Plaintiff and Defendant to transfer Plaintiff's shares in Marquette does not comply with the terms of the LLC Agreement, any attempt to invoke the terms of the promise is invalid and unenforceable.

As part of the purchase price of Plaintiff's companies, Plaintiff agreed to take $2,500,000.00 in shares of Marquette.   To do so, Plaintiff executed a Subscription Agreement

and a Restricted Units Agreement.  <u>See generally</u> Ex. 2, Subscription Agreement, dated Aug. 31, 2007; Ex. 3, Restricted Units Agreement, dated Aug. 31, 2007.  Through these two agreements, Marquette issued Plaintiff the shares he now demands Defendant repurchase.  Both agreements contain provisions governing the transfer of the shares being issued.  Specifically, the Subscription Agreement provides that Plaintiff "hereby agrees not to transfer any of the Units except in accordance with and subject to the terms and conditions of the LLC Agreement."  Ex. 2, § 5.  The Restricted Units Agreement similarly provides that Plaintiff's "Restricted Units may not be transferred, except in accordance with the LLC Agreement."  Ex. 3, Nontransferability.  Lastly, Plaintiff executed a Joinder Agreement whereby he acknowledged that he was "acquiring certain Units . . . of Marquette, subject to the terms and conditions of the LLC Agreement" and he agreed to be "bound by and subject to the terms of the LLC Agreement."  Ex. 4.  Therefore, the terms of the LLC Agreement clearly govern Plaintiff's ability to transfer his shares.

Article IX of Marquette's LLC Agreement sets forth the manner in which a unitholder may transfer his units.  Ex. 10, Art. IX.  It specifically provides that "[n]o Unitholder shall Transfer any interest in any Units without first complying with this Article IX."  <u>Id.</u> at Art. IX, § 9.1(a).  Article IX contains two specific terms that invalidate the alleged oral promise between Plaintiff and Defendant to repurchase Plaintiff's shares.  First, Section 9.2 of the LLC Agreement requires Plaintiff to provide Marquette and the other unitholders of Marquette with the opportunity to exercise their right of first refusal before completing any sale or transfer of Plaintiff's units.  <u>Id.</u> at Art. IX, § 9.2.[1]  Pursuant to this right of first refusal, even if Plaintiff and

---

[1] The Restricted Units Agreement specifically identifies this right of first refusal: "In the event that you propose to sell, pledge or otherwise transfer to a third party any vested Units acquired under this Agreement, or any interest in

Defendant had reached an oral promise to repurchase Plaintiff's shares, both Marquette and the other unitholders of Marquette must be given the opportunity to purchase Plaintiff's shares before Plaintiff and Defendant could consummate the oral promise.  Id.  However, Plaintiff makes no allegation that the oral promise contained a right of first refusal.  Accordingly, Plaintiff's acceptance of the alleged oral promise and his attempt to enforce the terms of the oral promise without abiding by Section 9.2 of the LLC Agreement is unenforceable.

Second, any proposed sale or transfer of units in Marquette to a third party is subject to the "tag along" rights provided in Section 9.5 of the LLC Agreement.  Id. at Art. IX, § 9.5. Pursuant to Section 9.5, Plaintiff is required to allow the other unitholders of Marquette to participate in any sale of his units in Marquette.  Id.  This tag along right must be provided according to a specific formula contained in Section 9.5.  Id.  Plaintiff does not allege that any acceptance by him of the alleged oral promise was subject to a tag along right as specified in Section 9.5, and thus Plaintiff's acceptance and attempt to enforce the oral promise contravenes his agreement under Section 9.5 and would be invalid.  Additionally, as a result of the formula for effecting the tag along right, if any unitholders elect to participate in the sale of Plaintiff's units, the number of units that Plaintiff would be able to sell would be significantly reduced, and Plaintiff's share of the proceeds would represent less than one percent of the total consideration. Id.  Therefore, Defendant's oral promise to Plaintiff could not result in the repurchase of all of Plaintiff's shares by Defendant, as Section 9.5 would significantly reduce the number of units Plaintiff would be able to sell.  Any attempt by Plaintiff to demand the repurchase of his shares

---

such Units, you must comply with the terms of the LLC Agreement, including the right of first refusal set forth therein."  Ex. 3, The Company's Right of First Refusal.

\\\DE - 068655/000041 - 460252 v9

under the oral promise without first abiding by Section 9.5 of the LLC Agreement is unenforceable.

Plaintiff is bound by the terms of the LLC Agreement as a unitholder. As a party to the LLC Agreement, Plaintiff knew or should have known that his acceptance of the supposed oral promise he seeks to enforce would violate the terms of the written LLC Agreement to which he is a party. Plaintiff cannot be allowed to assert claims against Defendant pursuant to an alleged oral promise that would contravene the LLC Agreement to which he is bound. Most importantly, any oral promise between Plaintiff and Defendant to repurchase Plaintiff's shares would have been without consideration, as Plaintiff could not perform his part of the agreement and transfer his shares to Defendant without breaching his own contractual obligations under the LLC Agreement. Thus, because Plaintiff's demand for the repurchase of his shares pursuant to the alleged oral promise fails to comply with the procedural requirements for the sale of his units as set forth in the LLC Agreement, any attempted transfer of his units would be invalid. Accordingly, Defendant is entitled to judgment as a matter of law on Plaintiff's claims.

**C.     Evidence Relating to an Alleged Oral Promise Between Plaintiff and Defendant is Inadmissible Under the Parol Evidence Rule Because it is Not Contained in Any of the Governing Agreements.**

The alleged oral promise between Plaintiff and Defendant cannot be enforced, as any evidence relating to such a promise is inadmissible as parol evidence that is not contained within the documents stemming from such a promise. The documents governing the subject matter of the alleged oral promise all contain integration clauses, and none contains any information or terms relating to the alleged oral promise. As a result, the parol evidence rule prohibits as

13

inadmissible any evidence relating to any outside oral promise that is not contained within these written documents.

Plaintiff's claims relate to a number of agreements with varying choice of law provisions. Plaintiff's allegations relate to both his stock purchase and his employment, and the termination thereof, with Marquette.   Delaware law governs enforcement and interpretation of the Subscription Agreement and Restricted Units Agreement.  Ex. 2, Applicable Law; Ex. 3, § 6(a). Kentucky law governs interpretation of the Employment Agreement.   Ex. 5, Employment Agreement, dated Aug. 31, 2007, § 10.0.   The parol evidence rules of both Delaware and Kentucky, however, dictate that Plaintiff's evidence of the oral promise, if used to vary or contradict the terms of the written agreements governing the transfer of his units, is inadmissible.

Under the parol evidence rule, "if a contract is unambiguous, extrinsic evidence may not be used to interpret the intent of the parties, to vary the terms of the contract or to create an ambiguity."  Eagle Indus., Inc. v. DeVilbiss Health Care, Inc., 702 A.2d 1228, 1232 (Del. 1997); see also Davis v. Siemens Medical Solutions USA, Inc., 399 F. Supp. 2d 785, 793 (W.D. Ky. 2005) (explaining that in Kentucky, "the parol evidence rule bars evidence of oral statements or writings made prior to or contemporaneous with a written agreement that contradict, vary or alter the language appearing in the writing" (citing Johnson v. Dalton, 318 S.W.2d 415, 417 (Ky. 1958)).  In other words, if parties reduce their agreement to writing with language indicating that the writing represents the fully integrated and complete agreement, then the parties agree that all terms are contained within the document, and the parol evidence rule prohibits the use of extrinsic evidence of prior or contemporaneous agreements to add or modify any terms or conditions.   Husband (P.J.O.) v. Wife (L.O.), 418 A.2d 994, 996 (Del. 1980) (explaining that

"[w]here the parties have made a contract and have expressed it in writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing") (citing Scott-Douglass Corp. v. Greyhound Corp., 304 A.2d 309, 315 (Del. 1973)); Bryant v. Troutman, 287 S.W.2d 918, 920 (Ky. 1956) ("The rule is that parol testimony is not admissible to vary the terms of a writing. When the negotiations are completed by the execution of the contract, the transaction, so far as it rests on the contract, is merged in the writing.").

Furthermore, the parol evidence rule bars admission of evidence of prior oral agreements when used to interpret shareholder agreements or other written documents governing corporate shares.  See e.g., Equitable Trust Co. v. Gallagher, 67 A.2d 50, 55 (Del. Ch. 1949); Aldridge v. Franco Wyoming Oil Co., 7 A.2d 753, 760–61 (Del. Ch. 1939); Hatcher-Powers Shoe Co. v. Bickford, and Thirteen Other Cases, 278 S.W. 615, 619 (Ky. 1925).  And because that is exactly what Plaintiff attempts to do here, summary judgment on Plaintiff's claims is warranted.

Plaintiff entered into an extensively documented transaction with Marquette, in which he received a total of $34 million dollars in consideration for the sale of his companies.  As part of that sale, he signed a Purchase Agreement that embodies the terms of the promise as negotiated by the parties.  See generally Ex. 1, Purchase Agreement, dated Aug. 31, 2007.  Nowhere does the Purchase Agreement reference or in any way identify any oral promise.  Id.  To the contrary, the Purchase Agreement contains an "Entire Agreement" clause indicating that it is "the entire agreement between the Parties and supersede[s] any prior understandings, agreements or representations by or between the Parties, written or oral, which may have related to the subject

15

matter hereof in any way."  <u>Id</u>. § 8.7.   The Purchase Agreement is thus the complete and fully-integrated agreement of the parties with respect to its subject and makes no mention of the alleged oral promise.

     Plaintiff also signed a Subscription Agreement and Restricted Units Agreement, whereby Marquette issued Plaintiff the shares that are the subject of this lawsuit.  <u>See generally</u> Ex. 2; Ex. 3.  Both agreements also contain integration clauses that state the agreements are the entire agreement between the parties with regard to the shares issued under the agreements.  Ex. 2, § 6(d) ("This Agreement constitutes the entire agreement among the parties hereto with respect to the matters set forth herein and supersedes and renders of no force and effect all prior oral or written agreements, commitments and understandings among the parties with respect to the matters set forth herein."); Ex. 3, The Plan ("This Agreement, the LLC Agreement, and the Plan constitute the entire understanding between [Plaintiff] and the Company regarding this grant of Units.  Any prior agreements, commitments, or negotiations concerning this grant are superseded.").  And like the Purchase Agreement, neither agreement includes any reference to an oral promise for the repurchase of Plaintiff's shares.  <u>See</u> Ex. 2; Ex. 3.

     Finally, Plaintiff signed an Employment Agreement setting forth the terms of his employment as President of Inland Marine Management Company, LLC.  <u>See generally</u> Ex. 5, Employment Agreement, dated Aug. 31, 2007.  The Employment Agreement  contains an "Entire Agreement" clause, providing that the agreement is "the parties' sole and entire agreement regarding the subject matter hereof, and supersedes any and all other agreements, statements and representations of the parties."  <u>Id</u>. § 8.1.  The Entire Agreement Clause further states that the parties "acknowledge and agree that no party has made any representations (i)

\\\DE - 068655/000041 - 460252 v9

concerning the subject matter hereof, or (ii) inducing the other party to execute and deliver this Agreement, except those representations specifically referenced herein." Id. § 8.2. And the Employment Agreement also contains numerous provisions governing the termination of Plaintiff's employment. Id. §§ 4.2–4.6, 4.10–4.11. None of these provisions provides for the repurchase of Plaintiff's shares upon the termination of his employment. See id.

It is uncontested that not only do none of the agreements executed by Plaintiff contain the barest allusion to any alleged promise to repurchase Plaintiff's shares in Marquette, but also it is undisputed that the supposed promise was first alleged only after Plaintiff became involved in a dispute with Marquette over the terms of his employment. And, as described above, even Plaintiff has denied the existence of any such promise while litigating that same employment dispute in another court.

The parol evidence rule deems inadmissible any evidence relating to an alleged oral agreement between the parties that is not contained within the integrated documents. Plaintiff's complaint is a textbook example of why the parol evidence rule exists. Plaintiff entered into a series of agreements, none of which contains even a vague reference to the supposed "oral contract" for the transfer of Plaintiff's shares. In fact, each of the agreements contains provisions specifically addressing the transfer of shares which contradict the supposed oral promise. The alleged oral promise is entirely inconsistent with each of the written agreements to which Plaintiff is a party. Therefore, because all of the above agreements contain integration or entire agreement clauses but do not contain any evidence of any alleged oral promise regarding the repurchase of Plaintiff's shares, any evidence of that supposed promise—evidence that would vary, modify, or contradict the clear terms of the written agreements—is exactly the type

17

prohibited by the parol evidence rule.   Accordingly, evidence of the alleged oral promise

between Plaintiff and Defendant is inadmissible.   Because Plaintiff cannot establish the existence

of any promise or contract for the repurchase of his shares, Plaintiff's claims fail as a matter of

law.

### III.   CONCLUSION

In light of the foregoing, Defendant respectfully requests that the Court grant Defendant's

motion for summary judgment on each of Plaintiff's claims.

Respectfully submitted this 20th day of August, 2010.

> DAMON S. JUDD, and KRG CAPITAL
> MANAGEMENT, L.P. d/b/a KRG CAPITAL
> PARTNERS, L.L.C.
>
> BY: HOGAN LOVELLS US LLP
>
> s/ Clayton C. James
> Clayton C. James (State of CO #26110)
> Hogan Lovells US LLP
> 1200 17th Street, Suite 1500
> Denver, CO 80203
> Tel:  303-899-7300
> Fax:  303-899-7333
> clay.james@hoganlovells.com
>
> FOWLER RODRIGUEZ VALDES-FAULI
>
> s/ John A. Scialdone
> John A. Scialdone (LAB #21859)
> Fowler Rodriguez Valdes-Fauli
> 2505 14th Street, Suite 500
> Gulfport, Mississippi 39501
> Tel:  228-822-9340
> Fax:  228-822-9343
>
> ATTORNEYS FOR DEFENDANT,
> KRG Capital Management, L.P.

18

## CERTIFICATE OF SERVICE

I hereby certify that on August 20, 2010, I electronically filed **DEFENDANT KRG'S MEMORANDUM IN SUPPORT OF DEFENDANT KRG'S MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system which will send notification of such filing on the following via electronic mail:

John J. Broders
Jane H. Heidingsfelder
William C. Baldwin
Jones, Walker, Waechter, Poitevent,
   Carrère & Denègre, L.L.P.
201 St. Charles Avenue – 50th Floor
New Orleans, LA  70170-5100

               s/ Clayton C. James
               Clayton C. James (State of CO #26110)
               Hogan Lovells US LLP
               1200 17th Street, Suite 1500
               Denver, CO 80203
               Tel:  303-899-7300
               Fax:  303-899-7333
               clay.james@hoganlovells.com

\\\DE - 068655/000041 - 460252 v9